UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BRUNSWICK CENTRAL SCHOOL
DISTRICT,

                     Plaintiff,

         -against-                           1:13-CV-0445 (LEK/RFT)

GILL MONTAGUE REGIONAL SCHOOL
DISTRICT,

                     Defendant.

## MEMORANDUM-DECISION and ORDER

**I. INTRODUCTION**

Plaintiff Brunswick Central School District ("Plaintiff," or "BCSD") brings this action seeking tuition reimbursement from Defendant Gill Montague Regional School District ("Defendant," or "GMRSD") under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et. seq. ("IDEA"). Dkt. No. 1 ("Complaint"). Both parties have filed Motions for summary judgment and oppositions. Dkt. Nos. 11 ("Defendant Motion"); 13 ("Plaintiff Response"); 15 ("Plaintiff Motion"); 16 ("Defendant Response"). Because the Court finds that it lacks subject-matter jurisdiction, this case is dismissed.

**II. BACKGROUND**

    **A. The IDEA**

Congress enacted the IDEA "to promote the education of handicapped children." Walczak v. Florida Union Free School Dist., 142 F.3d 119, 122 (2d Cir. 1998) (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 179 (1982)). "Toward that end, Congress provides federal funds to those states that develop plans to assure 'all children with disabilities the right to a free appropriate public

education ["FAPE"].'" Walczak, 142 F.3d at 122 (quoting 20 U.S.C. § 1412(1)); see also A.M. ex rel. Y.N. v. New York City Dep't of Educ., 964 F. Supp. 2d 270, 274 (S.D.N.Y. 2013) ("The [IDEA] requires any state receiving federal funds to provide disabled children with a FAPE."). The IDEA does not dictate how each state administers its education to disabled students, but merely provides that "[e]ach State that receives funds under this chapter shall . . . ensure that any State rules, regulations and policies relating to this chapter conform to the purposes of this chapter." 20 U.S.C. § 1407.

The IDEA also "ensure[s] that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE]." 20 U.S.C. § 1415. The IDEA's procedural safeguards serve two primary functions. First, "[i]f a parent believes that the [school district] has breached its obligations under the IDEA 'by failing to provide their disabled child a FAPE, the parent may unilaterally place their child in a private school at their own financial risk and seek tuition reimbursement.'" Scott ex rel. C.S. v. New York City Dep't of Educ., No. 12 CIV 3558, 2014 WL 1225529, at *2 (S.D.N.Y. Mar. 25, 2014) (quoting Florence Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7, 9-10, 16 (1993)). Second, a parent may also challenge the adequacy of their child's Individualized Education Plan ("IEP"). See Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist., 281 F. Supp. 2d 710, 713 (S.D.N.Y. 2003).

The IDEA requires parents or disabled children seeking tuition reimbursement or challenging an IEP to bring their claims through a state administrative process. See 20 U.S.C. § 1415. Only after the administrative process has been fully exhausted may they appeal an unfavorable, administrative decision in state or federal district court. See 20 U.S.C. § 1415(i)(2)(A); N.Y. EDUC. LAW § 4404(3); see also Antonaccio, 281 F. Supp. 2d at 713.

2

### B. Factual History[1]

Plaintiff is a New York state school district located in Rensselaer County. Dkt. No. 11-2 ("Def. Statement of Material Facts") ¶ 1. Defendant is a Massachusetts school district located in Franklin County, which includes the Village of Turner Falls ("Turner Falls"). Id. ¶ 2; Dkt. No. 15-5 ("Pl. Statement of Material Facts") ¶ 2. In May 2010, a child in Turner Falls was taken into foster care by the Massachusetts Department of Children & Families ("DCF") and placed in a foster home in Rensselaer County. Def. SMF ¶¶ 3-4. From May 2010 through June 2012, the child was enrolled in a special education program in Plaintiff's school district, which caused Plaintiff to incur tuition expenses in the amount of $67,719.76. Pl. SMF ¶¶ 3, 8.

On June 26, 2012, the Massachusetts Department of Elementary and Secondary Education ("DOE") issued a letter to Defendant concerning the tuition expenses incurred by Plaintiff. Dkt. No. 14 ("Pl. Response to Def. SMF") at 3. DOE's letter indicated that, pursuant to Massachusetts regulation 603 C.M.R. 28.10(4),[2] Defendant was fiscally responsible for the child's tuition expenses because the child's sole surviving parent resided in Turner Falls at the time the child was enrolled in

---

[1] Ordinarily in a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Where both parties have moved for summary judgment, it may thus be necessary to distinguish their factual assertions accordingly. See id. However, in this case, the facts are not in dispute, and therefore the Court has consolidated the parties' factual statements for purposes of this section.

[2] This regulation states, in relevant part, that "[t]he school district where the parent(s) . . . resides shall have financial responsibility and the school district where the student resides shall have programmatic responsibility when a student is in . . . a foster home . . . that is located outside of Massachusetts . . . . [W]hen a student is served in an in-district program, the school district where the student lives shall provide such services and may bill and shall receive payment for the special education costs . . . from the school district where the parent(s) or legal guardian resides." 603 C.M.R. 28.10(4)(a).

3

Plaintiff's school. Id. Additionally, on July 10, 2012, Walter Solzak ("Solzak"), Director of Special Education and Student Services for Defendant, sent a letter to the child's mother indicating "[w]e have been assigned responsibility for your son." Id. at 4.

After Plaintiff's repeated, unsuccessful attempts to obtain reimbursement from Defendant, see e.g., Dkt. No. 13-2 at 50, 52-53, 78, 86, Plaintiff commenced this action. See Compl. at 1. Plaintiff asserts that the Court may exercise subject-matter jurisdiction over this case because it "arises under" under the IDEA and "its regulations thereunder." Id. at 1-2.

### III.    LEGAL STANDARD

Federal district courts are "courts of limited jurisdiction," Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005), and have subject matter jurisdiction only over cases in which there is a federal question, or in which there is complete diversity of citizenship between the parties. See 28 U.S.C. §§ 1331, 1332. "Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks statutory or constitutional power to adjudicate it." Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008). Even in the absence of a challenge from any party, the Court is still obligated to determine whether it has subject matter jurisdiction. See Da Silva v. Kinsho Int'l Corp., 229 F.3d 358, 361 (2d Cir. 2000); see also U.S. v Robinson, 357 F. Supp. 2d. 523 (N.D.N.Y. 2005) (Kahn, J.) ("A court may *sua sponte* inquire into the subject matter jurisdiction and satisfy itself that such jurisdiction exists."). Finally, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

## IV. DISCUSSION

Federal-question jurisdiction is properly invoked when there is "a colorable claim 'arising under' the Constitution or laws of the United States." Arbaugh v. Y&H Corp., 546 U.S. 500, 513 (2006) (quoting 28 U.S.C. § 1331). "A case arises under federal law within the meaning of § 1331 . . . if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Empire Healthchoice Assur. v. McVeigh, 547 U.S. 677, 690 (2006); see also Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27-28 (1983).

### A. Private Right of Action

*1. Express Private Right of Action*

As described *supra*, the IDEA explicitly provides for an administrative process through which disabled children and their parents may file grievances concerning the child's education. See 20 U.S.C. § 1415(b). In addition, the IDEA permits children or their parents to appeal an unfavorable administrative decision in state or federal court. See id. at § 1415(i)(2). Thus, it is well established that the IDEA affords disabled children and their parents an express private right of action to bring suit in federal court after exhausting the administrative process. See Beth V. by Yvonne V. v. Carroll, 87 F.3d 80, 88 (3d Cir. 1995) (reversing district court's finding that disabled children and their parents did not have a private right of action under the IDEA); John T. v. Iowa Dep't of Educ., 258 F.3d 860, 862 (8th Cir. 2001) (discussing appeal of an administrative law judge's decision in a claim brought by parents challenging their child's IEP); Gadsby v. Grasmick, 109 F.3d 940, 948 (4th Cir. 1997) (noting parent's right to seek tuition reimbursement following an unfavorable administrative decision); Todd D. v. Andrews, 933 F.2d 1576, 1579 (11th Cir. 1991)

5

(recognizing parent's right to challenge administrative decision on child's IEP in district court); David D. v. Dartmouth Sch. Comm., 775 F.2d 411, 418-20 (1st Cir. 1985) (same).

Furthermore, school districts have also been permitted to appeal an unfavorable, administrative decision in federal court. See 20 U.S.C. § 1415(i)(2) ("[A]ny party aggrieved by the findings and decision made under this subsection . . . shall have the right to bring a civil action with respect to the complaint . . . in any State court of competent jurisdiction or in a district court of the United States. . . ."). However, in all such cases the dispute was initiated by parents at the administrative level. See, e.g., St. Tammany Parish Sch. Bd. v. State of La., 142 F.3d 776, 785 (5th Cir. 1998) (permitting a local school board to bring an action in federal court seeking reimbursement from the state DOE following an administrative determination of the school's liability in an action commenced by the student's parents); S.C. ex rel. C.C. v. Deptford Tp. Bd. of Educ., 213 F. Supp. 2d 452, 456-59 (D. N.J. 2002) (addressing school district's third-party complaint against NJ DOE in action initiated by parents); Todd D., 933 F.2d at 1582-83 (allowing cross claim by local educational authority against education department following administrative claim by parents); Bd. of Educ. of Oak Park & River Forest High Sch. Dist. No. 200 v. IL State Bd. of Educ., 10 F. Supp. 2d 971, 979-81 (N.D. Ill. 1998) (same).

The question presented in this case, however, is whether a school district, in the absence of an administrative grievance filed by a parent or disabled child, may nonetheless bring a tuition-related claim in federal court. This precise issue appears to be of first impression, but courts who have addressed similar issues have found that only parties "aggrieved" by an underlying administrative decision are granted a private right of action under the IDEA. See Asbury Park Bd. of Educ. v. Hope Acad. Charter Sch., 278 F. Supp. 2d 417, 421-23 (D. N.J. 2003) (finding where a

6

school district is "not aggrieved by the outcome of underlying administrative proceedings in a dispute over a particular child, the IDEA . . . does not afford it an express private right of action"); Cnty. of Westchester v. State of New York, 286 F.3d 150, 152-53 (2d Cir. 2002) (holding no private right of action for counties suing state for alleged failure to satisfy IDEA requirements); Andrews v. Ledbetter, 880 F.2d 1287, 1288-91 (11th Cir. 1989) (finding local education agencies cannot sue education department to provide IDEA services absent underlying challenge by handicapped child, parent, or guardian); Piedmont Behavioral Health Ctr., LLC v. Stewart, 413 F. Supp. 2d 746, 754 (S.D. W.Va. 2006) ("Sections 1412 and 1415 [of the IDEA] ensure that procedural safeguards exist for children with disabilities and their parents, not for entities with a vested financial interest in IDEA proceedings."); Va. Office of Prot. and Advocacy v. Va. Dep't of Educ., 262 F. Supp. 2d 648, 661 n. 5 (E.D. Va. 2003).

Here, Plaintiff is not appealing an administrative decision from a grievance filed by a parent or disabled child. See generally Compl. Thus, Plaintiff's claim does not fall within the scope of the IDEA's private right of action. See Asbury Park Bd. of Educ., 278 F. Supp. 2d at 421-23. Accordingly, Plaintiff does not have an express private right of action under the IDEA to bring its claim in federal court.

### 2. Implied Private Right of Action

"'[U]nless congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" Thompson v. Thompson, 484 U.S. 174, 179 (1988) (quoting Nw. Airlines, Inc. v. Transp. Workers, 451 U.S. 77, 94 (1981)). "The plain language of §§ 1412 and 1415 unambiguously provide[s] disabled children and parents of disabled children administrative

remedies to address IDEA-related disputes. A review of the IDEA, however, reveals no such intent to provide [other] entities seeking reimbursement for the costs of educating disabled children access to these procedural safeguards." Piedmont, 413 F. Supp. 2d at 753. Moreover, "Section 1415(a) of the IDEA, entitled 'establishment of procedures,' provides that procedures shall be established and maintained 'in accordance with this section *to ensure that children with disabilities and their parents* are guaranteed procedural safeguards with respect to the provision of [a FAPE].'" Lawrence Twp. Bd. of Educ. v. New Jersey, 417 F.3d 368, 371 (3d Cir. 2005) (quoting 20 U.S.C. § 1415(a) (emphasis in original). "Similarly, section 1412(a)(6), which is entitled 'procedural safeguards,' provides that "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by section [1415]." Id. (quoting 20 U.S.C. § 1412(a)(6)(A)). "This language strongly suggests that Congress intended to provide a private right of action only to disabled children and their parents." Id. Therefore, the Court finds that Congress did not intend to provide a private right of action for a school district seeking tuition reimbursement from another school district in the absence of an underlying administrative decision. See St. Tammany Parish Sch. Bd.,142 F.3d at 785. Accordingly, no implied private right of action exists for Plaintiff's claim, and subject-matter jurisdiction cannot be asserted on that basis.

### B. Substantial Question of Federal Law

In the absence of a private right of action, a "case might still 'arise under' the laws of the United States if a well-pleaded complaint establishe[s] that [the plaintiff's] right to relief under state law requires resolution of a substantial question of federal law." City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 164 (1997). The mere fact that a suit "takes its origin in the laws of the United States," however, does not necessarily make it "one arising under the Constitution or laws of

8

the United States." Shoshone Mining Co. v. Rutter, 177 U.S. 505, 507 (1900).  Rather, a substantial question of federal law exists where "the right of the [plaintiffs] to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another."  Va. Office of Prot. & Advocacy, 262 F. Supp. 2d at 656-57.

Here, Plaintiff's Complaint does not raise a substantial question of federal law.  In fact, the IDEA is only mentioned once throughout the entirety of the parties' submissions—in conclusory fashion as the basis for jurisdiction.  See Compl. at 1-2.  Bare allegations that a case "arises under" the IDEA do not automatically establish federal question jurisdiction.  See Bay Shore Union Free Sch. Dist. v. Kain, 485 F.3d 730, 736 (2d Cir. 2007) ("Nor does the IDEA's explicit authorization of a cause of action to be brought by 'any party aggrieved by the findings and decision' of the state educational agency *ipso facto* raise a federal question that would confer jurisdiction in this case on a federal court.") (citing 20 U.S.C. § 1415(i)(2)(A)).

Plaintiff argues that Defendant's liability is established by: (1) a letter from the MA DOE stating that, *under Massachusetts regulations*, Defendant is fiscally responsible for the student, and (2) Solzak's letter in which Plaintiff claims responsibility for the child.  See Dkt. No. 15-6 at 2.  However, Plaintiff does not assert that the MA regulation fails to comport with the IDEA or otherwise implicates federal law.  See id.  Moreover, Plaintiff neither argues that Defendant violated the IDEA, nor challenges a provision of the IDEA itself.  cf. Va. Office of Prot. & Advocacy, 262 F. Supp. 2d at 657 (finding federal-question jurisdiction where the plaintiff specifically challenged the procedural protections in the IDEA).

9

Ultimately, the only connection between this case and the IDEA is that the IDEA serves as the source of funding for the tuition expenses at issue; Plaintiff's claim otherwise has no relation to the IDEA. Therefore, although Plaintiff states its claim "arises under" the IDEA, it is purely a monetary dispute involving only the application of state law; Plaintiff's entitlement to relief does not "necessarily depend[] on resolution of a substantial question of federal law." Gully v. First Nat'l Bank in Meridian, 299 U.S. 109, 112 (1936); see also Lawrence Twp. Bd. of Educ., 417 F.3d at 371 ("A budgetary dispute between [educational] agencies is simply not among the private actions contemplated by the IDEA, and is traditionally the type of dispute left to state and local authorities.").

Furthermore, Defendant has not raised a federal question in any of its pleadings. In Defendant's Motion for summary judgment, it argues exclusively that under MA and NY *state* law, it is not liable for reimbursement. Def. Mot. at 2-5. Defendant first argues that "under the Interstate Compact on the Placement of Children, statutorily in effect in both the State of New York and the Commonwealth of Massachusetts, [Defendant] has no obligation to reimburse [Plaintiff]." Id. at 3-5. However, Defendant's reliance on the Interstate Compact on the Placement of Children is entirely misplaced, as it explicitly provides that it "does not include . . . any institution primarily educational in character." N.Y.S.S.L. § 374-a, Art. II(d). Thus, this statute is irrelevant, and, in any event, does not raise a question of federal law.

Defendant's second argument is that under Massachusetts regulation, 603 C.M.R. § 28.10(4)(b), it is only liable to reimburse a second school district within MA, but not any school district outside of the state. See id. at 5. Defendant's arguments only call for interpretation of state law and do not raise any question or application of the IDEA. See Standage Ventures v. Arizona,

10

499 F.2d 248, 250 (9th Cir. 1974) (deeming no federal question to exist where "the real substance of the controversy . . . turns entirely upon disputed questions of law and fact relating to compliance with state law, and not at all upon the meaning or effect of the federal statute itself"). Thus, no federal question is presented in this case.[3]

Therefore, because the Court finds that diversity jurisdiction is lacking and no federal question is presented, the case must be dismissed. See Bay Shore, 485 F.3d at 736 ("We hold that a federal court may not exercise jurisdiction over a civil action brought under [the IDEA] if the claims asserted turn exclusively on matters of state law and diversity of citizenship is absent.")

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3); and it is further

**ORDERED**, that Defendant's Motion (Dkt. No. 11) for summary judgment is **DENIED as moot**; and it is further

**ORDERED**, that Plaintiffs' Motion (Dkt. No. 16) for summary judgment is **DENIED as moot**; and it is further

**ORDERED**, that the Clerk of the Court close this case; and it is further

---

[3] The Court also finds *sua sponte* that diversity jurisdiction is lacking in this case. Diversity jurisdiction requires that (1) all adverse parties be citizens of different states and (2) the amount in controversy exceed $75,000. See 28 U.S.C. § 1332(a); Herrick Co. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2000); Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373-74 (1978); St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73, 80 (2d Cir. 2005). Here, it is undisputed that the parties are citizens of different states; Plaintiff is a citizen of New York, and Defendant is a citizen of Massachusetts. See Def. SMF ¶¶ 1-2; Pl. SMF ¶¶ 1-2. However, the amount in controversy is $67,719.76, which is below the statutory threshold. Pl. SMF ¶ 8; 28 U.S.C. § 1332(a). Therefore, diversity jurisdiction does not exist over this action.

11

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: August 12, 2014
Albany, NY

Lawrence E. Kahn
U.S. District Judge